IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

STATESBORO DIVISION

| | |
|---|---|
| CHRISTOPHER L. AMERSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CV 619-128 |
| ) | |
| TIMOTHY WARD; GREG DOZIER; ) | |
| THOMAS ROBERT TOOL; TERENCE ) | |
| KILPATRICK, Warden; YOLANDA BYRD, ) | |
| Tier Warden of Security; DERIC GODFRY, ) | |
| Unit Manager; SGT. QUAN JACKSON; ) | |
| LT. KENDRIC JACKSON; SGT. SUMNER; ) | |
| SMITH, Warden of Security; and LT. OSCAR ) | |
| WAYCASTER, ) | |
| ) | |
| Defendants. ) | |

**O R D E R**

Plaintiff, incarcerated at Telfair State Prison in Helena, Georgia, brought the above-captioned case pursuant to 42 U.S.C. § 1983, regarding events alleged to have occurred at Smith State Prison ("SSP") in Glennville, Georgia. Because he is proceeding *in forma pauperis* ("IFP"), Plaintiff's complaint must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984); Al-Amin v. Donald, 165 F. App'x 733, 736 (11th Cir. 2006) (*per curiam*).

**I.      COMPLAINT ALLEGATIONS**

Plaintiff names as Defendants: (1) Timothy Ward; (2) Greg Dozier; (3) Thomas Robert Tool; (4) Terence Kilpatrick; (5) Yolanda Byrd; (6) Deric Godfry; (7) Sgt. Quan Jackson; (8) Lt.

Kendric Jackson; (9) Sgt. Sumner; (10) Smith; and (11) Oscar Waycaster. (Doc. no. 2, pp. 1-2.) Taking all of Plaintiff's allegations as true, as the Court must for purposes of the present screening, the facts are as follows.

On May 15, 2019, Plaintiff submitted an emergency grievance to Counselor Atkinson alleging Officer Conaway retaliated against Plaintiff by serving him food containing an unspecified harmful item. (Id. at 6.) An unknown staff member informed an inmate orderly that Plaintiff named inmates Allen, Playboy, Dallas, and Miller in the grievance. (Id.) On May 24, 2019, Plaintiff was involved in a series of altercations with these inmates, leading to Plaintiff being stabbed multiple times in the back, head, and right arm. (Id. at 8-9.) The incident lasted seven minutes and was recorded on "J-2" cameras. (Id. at 9.) Prison officials delayed responding to the incident. (Id.) Plaintiff lost consciousness and was airlifted to Memorial Health Hospital with a punctured lung, fractured ribs, and stab wounds. (Id.) Plaintiff spent four days in the hospital with a chest tube draining blood from his lungs. (Id. at 10.)

Plaintiff contends Defendants should have prevented his assault by improving the overall safety of the prison and by responding to Plaintiff's warnings that an assault on him was imminent. Before the assault, Plaintiff notified Defendants Tool, Dozier, and Ward of the threat against him by letters explaining his life was in danger due to complaints he filed against staff and inmates, the sharing of his complaints with inmates, and a prior incident where another inmate was stabbed after he complained about staff and inmates. (Id. at 9-10.) Plaintiff did not receive a response from his letters, and no preventative measures were taken. (Id.)

In terms of the overall safety of the prison, Plaintiff complained to Defendants prior to his assault of an excessively high level of danger within the general population and in the lockdown unit. (Id. at 9.) In the one month prior to his assault, inmate stabbings occurred on a regular

basis with no effort by prison officials to curb inmate access to knives and shanks. (Id.) "Defendants Kilpatrick, Smith, Byrd, Lt. Jackson, Godfry, [and] Sgt. Jackson [were] aware of the stabbings . . . but . . . refused to take appropriate action, [to] insure the safety of the inmates . . . by conducting adequate cell and body searches, and searches according to Tier Policy . . . ." (Id. at 9.) The prison's response to Plaintiff's assault is an example of the lackluster security measures. (Id. at 10.) When Plaintiff returned to SSP from the hospital, investigators did not interview him, and the inmates responsible for Plaintiff's injuries were never disciplined. (Id.)

Plaintiff returned from the hospital on May 29th and requested medical attention because of difficulty breathing and chest pains. (Id.) From May 31st through June 2nd, Plaintiff informed Warden Brown he needed medical attention but did not receive any treatment. (Id.) On June 3, 2019, Plaintiff filed a grievance concerning the May 24th stabbing and Defendants' failure to protect him from harm, mailing a copy of the grievance to Defendant Dozier. (Id.)

That same day, Plaintiff kept his door flap open in hopes of receiving medical attention and air. (Id.) Despite knowing Plaintiff's medical condition, Defendant Sumner reported Plaintiff to Defendant Waycaster. (Id.) Defendant Waycaster pepper-sprayed Plaintiff's hands and yelled "you are not going to medical, put your hands in the flap." (Id.) Defendant Waycaster stopped long enough for Plaintiff to repeat his need for medical attention, then resumed pepper spraying Plaintiff as he waited to be handcuffed. (Id. at 11.) The pepper spray entered Plaintiff's stab wounds, which caused severe pain and burning. (Id.) Plaintiff was not allowed to clean his cell, change his bedding, or take a shower after the incident. (Id.)

Defendant Sumner watched and recorded as Plaintiff was pepper sprayed but failed to intervene. (Id.) Plaintiff informed Sgt. Quan Jackson he needed new bedding and medical attention, to which Sgt. Quan Jackson responded "ok," and walked away. (Id.) Nine hours

3

elapsed with no medical attention or new bedding. (Id.) When Plaintiff complained to Nurse Linda Miller, she determined Sgt. Quan Jackson never notified the medical unit of Plaintiff's need for medical attention, and approximately one hour later, Sgt. Quan Jackson and Lt. Kendric Jackson took Plaintiff to the medical unit to see Dr. Brown. (Id.) However, Dr. Brown only treated Plaintiff's stab wounds and did not evaluate Plaintiff for any injuries caused by the pepper spray. (Id.)

From these facts, Plaintiff asserts the following claims as specified in pages twelve and thirteen of the complaint:

1. Failure to investigate Plaintiff's assault, punish his assailants, and implement reforms to make the prison safer, against Defendants Dozier, Ward, Tool, Kilpatrick, Byrd, and Smith;

2. Failure to adopt security measures to stem the tide of regular stabbings occurring within the general population and the lockdown unit, against Defendants Dozier, Ward, Tool, Kilpatrick, Byrd, Smith, Godfry, Sgt. Quan Jackson, and Lt. Kendric Jackson;

3. Failure to protect Plaintiff from the specific threat of an assault created by the grievance he filed against Counselor Atkinson despite Plaintiff notifying Defendants of this specific threat, against Defendants Dozier, Ward, Tool, Kilpatrick, Byrd, Smith, Godfry, Sgt. Quan Jackson, and Lt. Kendric Jackson;

4. Excessive force and retaliation claims against Defendant Waycaster for repeatedly spraying him with pepper spray and refusing to clean up Plaintiff's cell and obtain new bedding after the pepper spraying;

5. Deliberate indifference to medical needs claim against Defendant Waycaster and Sgt.

4

>> Quan Jackson, for refusing to obtain medical assistance for Plaintiff's stab wounds after the pepper spraying and refusing to clean up Plaintiff's cell and obtain new bedding after the pepper spraying; and

6. Failure to intervene claim against Defendant Sumner, for failing to intervene and protect Plaintiff from Defendant Waycaster's excessive force and retaliation.

For relief, Plaintiff requests monetary damages and declaratory and injunctive relief. (Id. at 12-13.)

Liberally construing Plaintiff's allegations in his favor and granting him the benefit of all reasonable inferences to be derived from the facts alleged, the Court finds Plaintiff has *arguably* stated the following viable claims: (1) a claim in Count Two for allegedly unsafe prison conditions against Defendants Kilpatrick, Byrd, and Smith; (2) excessive force and retaliation claims in Count Four against Defendant Waycaster; (3) deliberate indifference to medical needs claim in Count Five against Defendants Waycaster and Sgt. Quan Jackson; and (4) failure to intervene in Count Six against Defendant Sumner. See Williams v. Rickman, 759 F. App'x 849, 853 (11th Cir. 2019) (finding meritorious claim based on allegation inmate stayed overnight in cell with mattress contaminated with pepper spray, causing skin burns and breathing difficulties); Velazquez v. City of Hialeah, 484 F.3d 1340, 1341-42 (11th Cir. 2007) ("[A]n officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force, can be held liable for his nonfeasance.") (internal citations and quotations omitted); Bennett v. Hendrix, 423 F.3d 1247, 1250 (11th Cir. 2005) ("A plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights."); Farmer v. Brennan, 511 U.S. 825, 828 (1994) (citations omitted) ("A prison official's 'deliberate indifference' to a

substantial risk of serious harm to an inmate violates the Eighth Amendment."); Farmer, 511 U.S. at 832 ("[P]rison officials must . . . 'take reasonable measures to guarantee the safety of the inmates . . . .'"); Estelle v. Gamble, 429 U.S. 97, 104-05 (1976) (explaining "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain'").

Accordingly, process shall issue as to Defendants Kilpatrick, Byrd, Smith, Waycaster, Sgt. Quan Jackson, and Sumner. In a companion Report and Recommendation, the Court recommends dismissal of Defendants Dozier, Ward, Tool, Godfry, and Lt. Jackson, Plaintiff's official capacity claims for monetary relief, and claims for unsafe prison conditions and failure to protect against Sgt. Quan Jackson.

## II. INSTRUCTIONS

**IT IS HEREBY ORDERED** that service of process shall be effected on Defendants. The United States Marshal shall mail a copy of the complaint, (doc. no. 2), and this Order by first-class mail and request that the defendants waive formal service of the summons. Fed. R. Civ. P. 4(d). Individual defendants have a duty to avoid unnecessary costs of serving the summons, and if a defendant fails to comply with the request for waiver, the defendant must bear the costs of personal service unless good cause can be shown for failure to return the waiver. Fed. R. Civ. P. 4(d)(2). A defendant whose return of the waiver is timely does not have to answer the complaint until sixty days after the date the Marshal mails the request for waiver. Fed. R. Civ. P. 4(d)(3). However, service must be effected within 90 days of the date of this Order, and the failure to do so may result in the dismissal of any unserved defendant or the entire case. Fed. R. Civ. P. 4(m). Plaintiff is responsible for providing sufficient information for the Marshal to identify and locate the defendant to effect service.

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon the defendants, or upon their defense attorney if appearance has been entered by counsel, a copy of every further pleading or other document submitted to the Court. Plaintiff shall include with the papers to be filed a certificate stating the date a true and correct copy of any document was mailed to the defendants or their counsel. Fed. R. Civ. P. 5; Loc. R. 5.1. Every pleading shall contain a caption setting forth the name of the court, the title of the action, and the file number. Fed. R. Civ. P. 10(a). Any paper received by a District Judge or Magistrate Judge that has not been properly filed with the Clerk of Court or that fails to include a caption or certificate of service will be returned.

It is Plaintiff's duty to cooperate fully in any discovery that may be initiated by the defendants. Upon being given at least five days' notice of the scheduled deposition date, Plaintiff shall appear and permit his deposition to be taken and shall answer, under oath and solemn affirmation, any question that seeks information relevant to the subject matter of the pending action. Failing to answer questions at the deposition or giving evasive or incomplete responses to questions will not be tolerated and may subject Plaintiff to severe sanctions, including dismissal of this case. The defendants shall ensure that Plaintiff's deposition and any other depositions in the case are taken within the 140-day discovery period allowed by this Court's Local Rules.

While this action is pending, Plaintiff shall immediately inform this Court and opposing counsel of any change of address. Failure to do so will result in dismissal of this case.

Plaintiff must pursue this case; if Plaintiff does not press the case forward, the Court may dismiss it for want of prosecution. Fed. R. Civ. P. 41; Loc. R. 41.1. If Plaintiff wishes to obtain facts and information about the case from the defendants, Plaintiff must initiate discovery. See

7

generally Fed. R. Civ. P. 26 through 37 (containing the rules governing discovery and providing for the basic methods of discovery). Plaintiff should begin discovery promptly and complete it within four months after the filing of the first answer of a defendant named in the complaint screened herein.

Interrogatories are a practical method of discovery for *pro se* litigants. See Fed. R. Civ. P. 33. Interrogatories shall not contain more than twenty-five questions. Id. Plaintiff must have the Court's permission to propound more than one set of interrogatories to a party. Discovery materials should not be filed routinely with the Clerk of the Court; exceptions include when the Court directs filing; when a party needs such materials in connection with a motion or response, and then only to the extent necessary; and when needed for use at trial. If Plaintiff wishes to file a motion to compel pursuant to Fed. R. Civ. P. 37, he should first contact the attorney for the defendants and try to work out the problem; if Plaintiff proceeds with the motion to compel, he should also file a statement certifying that he has contacted opposing counsel in a good faith effort to resolve any dispute about discovery. Loc. R. 26.5.

Plaintiff must maintain a set of records for the case. If papers are lost and new copies are required, these may be obtained from the Clerk of the Court at the standard cost of fifty cents per page.

Under this Court's Local Rules, a party opposing a motion to dismiss shall file and serve his response to the motion within fourteen days of its service. "Failure to respond shall indicate that there is no opposition to a motion." Loc. R. 7.5. Therefore, if Plaintiff fails to respond to a motion to dismiss, the Court will assume that there is no opposition to the defendant's motion and grant the dismissal.

A response to a motion for summary judgment must be filed within twenty-one days after

service of the motion.  Loc. R. 7.5, 56.1.  A failure to respond shall indicate that there is no opposition to the motion.  Loc. R. 7.5.  Furthermore, each material fact set forth in a defendant's statement of material facts will be deemed admitted unless specifically controverted by an opposition statement.  Should a defendant file a motion for summary judgment, Plaintiff is advised that he will have the burden of establishing the existence of a genuine issue as to any material fact in this case.  That burden cannot be carried by reliance on the conclusory allegations contained within the complaint.  Should a defendant's motion for summary judgment be supported by affidavit, Plaintiff must file counter-affidavits if he desires to contest the defendant's statement of the facts.  Should Plaintiff fail to file opposing affidavits setting forth specific facts showing that there is a genuine issue for trial, the consequences are these: any factual assertions made in the defendant's affidavits will be accepted as true and summary judgment will be entered against Plaintiff pursuant to Fed. R. Civ. P. 56.

SO ORDERED this 13th day of November, 2020, at Augusta, Georgia.

/s/ Brian K. Epps
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA